Good morning, Your Honors. May it please the Court, Amy Kapoor, Federal Defenders, on behalf of Counsel, would you please keep your voice up? On behalf of Mr. Melendez-Castro. It's undisputed in this case that Mr. Melendez-Castro qualified for pre-conclusion voluntary departure. But the immigration judge in this case violated Mr. Melendez-Castro's due process rights in three ways. One, he failed to adequately notify Mr. Melendez-Castro of his right to apply for voluntary departure. Two, he failed to give Mr. Melendez-Castro an opportunity to develop that issue in applying for voluntary departure. Didn't he tell him he was eligible for voluntary departure? The statement the immigration judge made in this case, he stated, You are eligible for voluntary departure, but I would not grant it to you because I don't give it to anyone with criminal convictions. Doesn't the I.J. have the discretion to do that? Well, if we look at I.N.S. v. Campos-Granillo, which was a Ninth Circuit case, where they vacated from an immigration judge, they vacated back because they said, from a denial of voluntary departure. And in that case, it says that, A mere conclusory statement from the immigration judge is insufficient because a reviewing court must see the petitioner's claim has been heard, considered, and decided. But in that case, hadn't the alien requested voluntary departure? So it was an adjudication after he had requested or applied for it. But in that case, I think that case is instructive because how was Mr. Melendez-Castro supposed to have known to apply for voluntary departure when it's the immigration judge's job in this case to explain to him what he needs to present in order to apply for voluntary departure? Are you referring to the Jacinto case in terms of what he must be told? Actually, I think that I'm referring to, again, Campos-Granillo because in I.N.S. v. Campos-Granillo, it says that in the immigration judge telling the client, especially when someone appears pro se, which Mr. Melendez-Castro did, he has to explain to him what he needs to do in order to apply for voluntary departure. Tell him about the procedures that he must follow. Yes, he needs to tell him what, because an immigration judge needs to consider both the positive and negative equities. In this case, he never explains to him what voluntary departure is and what he would need to do in order to apply for it. He says, you may be eligible, but I don't give it to anyone with criminal conviction and there is nothing that you could do. So how is Mr. Melendez-Castro to know that he can present these equities? There was nowhere in this record that he gave him that opportunity. Now, what do we do about the fact that the IJ told him he was eligible for cancellation of removal and he said, well, I'm not interested? Well, I think that cancellation of removal is a separate type of relief. Cancellation of removal, if we look at the record, he says that, Mr. Melendez-Castro says, how long would it take for me to get this type of removal? He said, well, you'd probably have to stay past Christmas. I think he didn't want to stay in custody. He wanted to go back to Mexico. Voluntary departure would have allowed him to go back to Mexico without a formal deportation order and would have allowed him to immediately adjust status back into the United States so that he had a United States citizen wife, he had a United States citizen daughter. He was never explained the benefits of voluntary departure. I think that if he would have been explained those benefits, he probably would have wanted to apply, but he was never explained to it because the judge essentially prejudged the case, saying that I don't consider anyone with criminal convictions, which goes directly against what this Court has said the judge needs to consider. And so have we said that the I.G. has to explain the benefits or just to explain that they're eligible? What have we said about that? In Campus Grineo, when this Court has said, in considering whether an immigration judge has exercised discretion in the case. But that's, we're already into the merits in Campus Grineo. That's after he's applied and then did the I.J. do a good enough job in evaluating his eligibility? That's different than at a threshold, I would think. Well, but I think that that case is instructive because it says, the quote says that an I.J. must evaluate all of the favorable and unfavorable factors in assigning weight. And if in the record it's not clear that they consider the positive and negative equities, then they remand it. Right, so that might have been wrong. So in other words, had he applied for voluntary departure and the I.J. said, I don't want to hear your equities, I'm just going to deny it because of this one fact, then the BIA might have reversed it. Or if the BIA didn't on the petition for review, we might have said the I.J. But the question isn't the evaluation of the merits. The question is, did the I.J. deprive him of the ability to exhaust administrative remedies? Because that's Section 1326d.1. And I'm having trouble understanding how the I.J.'s telling him, this is how I will exercise my discretion, deprived him of the ability to exhaust his administrative remedies. Because if he had applied and been denied, he already knew about the appeal right. So I'm having trouble understanding that. Yes, Your Honor. Well, there's no published case law, but there is actually numerous unpublished case law that has decided this exact issue. In the United States, Free Us, Floor Us decided in April of this year, the I.J. in that case said, because the I.J. did not, he said, well, sir, I deny voluntary departure because of your convictions and make a decision that you should be removed to Mexico. That court found the I.J. violated due process and reversed the alien's conviction for illegal entry because the I.J. did not inform him of the statutory eligibility for plea conclusion voluntary departure and found that his waiver of appeal was not knowing and intelligent. So you're saying for purposes of our published case law, this is an issue of first impression. Yes, it is. In terms of, because there is no published case law where someone has been, although I can't consider this where someone where they mention voluntary departure and then say, well, you're not eligible because of criminal convictions. There is no published case law, but I think that the case law is clear. I don't know how Mr. Miland and Ms. Castro would have known to appeal, to say I want to appeal when in one sentence the judge is saying you're eligible, but there's nothing that you could do, and I'm only basically telling you you're eligible for voluntary departure because I'm required to do it. On the voluntary departure, the regulations say, well, it's a 30-day, up to 30 days unless the Department of Homeland Security asks for more time to process a voluntary departure application. As a practical matter, what is the usual time frame for that? When someone is given voluntary departure. Right, so in other words, a person in this position who asks for voluntary departure, what would be the time frame for a determination of that issue? Sometimes it's made right within that hearing. If the IJ feels he needs more information, he'll move it to a next calendar, maybe a week later, but the purpose of voluntary departure, the reason it was created is so that it would expedite these proceedings for the immigration court. So it is supposed to happen quickly. So it may have been heard at that moment or I've seen it being heard the next week if the IJ feels that. Well, since here the IJ thought that as a discretionary matter, there were issues relating to the person's record, it doesn't sound like it would be a decision made on the spot. So if it's a decision not made on the spot, then what happens? Then he may ask for, well, when it's done properly, they usually ask the questions, well, how long have you lived here? What is your work history? Do you have family? And usually that person is able to answer. And then they have considered both the positive and negative equities or sometimes the immigration judge will give the person an opportunity if they want to bring family in in order to present. We'll give them more of an opportunity. It happens both ways. Okay, thanks. Counsel, if I could interject a question here. Yes. Assuming that the way the IJ handled voluntary departure was in some respect deficient, accepting your argument on that, for a due process violation in a collateral attack, you also have to show that there was a plausible claim for voluntary departure. So my question is not do you think it was plausible because I've seen your brief on that, but what I don't recall is did the district court here address plausibility expressly or if we agree with you on deficient colloquy on voluntary departure, would we have to remand to the district court to assess prejudice? The district court in this case, the majority of the argument did focus on whether the judge, whether there was a due process violation. The judge did say he did not find a due process violation and then sort of wholesale said that he just would agree with the government in terms of the prejudice argument. But we never had an opportunity to really develop that on the record. I think that there's enough facts in the record to show that Mr. Melendez-Castro would have had a plausible ground for prejudice. So I think that there is enough information in the record. But it wasn't really addressed in district court. He just said, well, if this court finds that there was a due process violation, I still agree with the government that prejudice would not have been. I have a question. Yes, Your Honor. You're over time, but I'm assuming our presiding judge will give you time for rebuttal. What were some of the equities that you wanted to argue on behalf of your client? Yes, Your Honor. My client had legally resided in the United States for about 10 years. He had a United States citizen wife. He had a United States citizen daughter. He had a long work history here. His dad owned a tire company, and he worked at that tire company, as well as he was an electrician. He worked as a construction worker. These are all factors, positive factors, that are supposed to be considered in a grant of voluntary departure. What were the misdemeanors of which he was convicted? His criminal history, he had misdemeanors for theft and then one of petty theft with a prior, a felony for theft. They were all theft convictions. He had never served more than, I think, 90 days in custody. My understanding, the petty theft was for $6 worth of boxer shorts. Is that correct? That is correct, Your Honor. And what was the other? They're all similar in nature from a Target or a Kmart. Thank you. Thank you, unless Your Honor has more questions. We'll give you a minute for rebuttals, since we carried you on with questions quite a ways. Thank you, Your Honor. Thank you. Good morning. My pleas at court, Randy K. Jones, Assistant U.S. Attorney, on behalf of the United States in this matter. With respect to the due process argument, even assuming that there were some deficiencies as Judge Gould mentioned, Justice Gould mentioned, I want to focus on the prejudice issue here. In this particular case, the defendant, the judge, and the immigration judge acted properly at his discretion when he denied voluntary departure in this case. So wasn't the I.J. required to take affirmative steps to give Mr. Melendez an opportunity to develop his claim for voluntary departure, referring to the equities just referred to by counsel? Well, I think he gave him an opportunity. When the I.J. mentioned his right to cancellation of removal and went through that right, telling him that he had a right to cancellation of removal. He did that very clearly. But with respect to voluntary departure, he didn't do the same, did he? Well, maybe not exactly the same. But I think you can, by implication, see that what he was doing was taking the response given by the defendant in this case that, hey, look, I want to get out of here before Christmas. I don't want to deal with this cancellation of removal. So he just shifted that when he talked about voluntary departure. In fact, he said, you have another right. You may have another right, and that's the right of voluntary departure. Anybody who's committed a crime, I'm not going to give voluntary departure. He couldn't give it. It was an aggravated felony. But these were two minor crimes. And he simply said to the pro se litigant, I never give voluntary departure to anybody who's committed any crime. Well, the I.J. had an opportunity to view the record of this defendant. He knew what this defendant's prior record was. And it wasn't just the two prior misdemeanor charges. There were five misdemeanor charges before the 1997 departure. Is that in the record? It is in our brief. We put that in our brief, that he had five misdemeanor prior to his 1997 departure. And after his 1997 departure, he had four felonies and a misdemeanor drug conviction. And his last petty theft was with a prior, and that got him 180 days in jail. Plus, he had a possession of a deadly weapon charge that was also after. Granted, it was after the 1997 removal. But this just shows that when we talk about. . . Well, that wasn't in the record at the time that the I.J. acted. No, but the prior misdemeanors were. The prior misdemeanors, the five misdemeanors were. And the judge knew that. And he knew that in his discretion, he doesn't give voluntary departure to someone with that kind of criminal record. So could he have developed that voluntary departure a little bit better? Perhaps. But in this particular case, even if you find that there was a lack of development of that piece of the record, there's still no prejudice because the defendant can't show that he had a plausible ground for relief. Because the judge is already telling you, I'm not going to grant that relief. Based on your criminal record, which is a factor that he can take into consideration based on all the case law, one of the factors that he can take into consideration is recidivism, prior record. He can take that into his discretion. And he did so. And he told the defendant that even if you were to apply for voluntary relief, I will not grant it, in essence, because I don't give it to people with criminal records. So there was no plausible grounds for relief, as counsel argued. The I.J. said that as plain and clear as he possibly could. If I could ask you a question on that, please. As a matter of general policy, no voluntary departure if you have any criminal record. In this particular case, I would argue that he's paying particular attention to this defendant because that was a person he was talking to at that time. He had already developed the record to a certain degree in discussing the allegations in the notice to appear, as well as he had asked him some questions about his parents, whether they were citizens of the United States, and then gotten into the counsel issue. Excuse me. I think Judge Gould had a question. Yes. I did. I didn't mean to interrupt Judge Nelson, but my question, if you've answered her fully now, is this. And just as one judge, let's say to me the procedure seems somewhat deficient because like with one breath he says, you have the right to voluntary departure, and apparently the guy's eligible for it, but in the same breath completes his sentence by saying, but I never give it to people with crimes, but without really developing, you know, the full scope of that. But assuming that that was deficient, there is a major prejudice question here. And my question to you, counsel, is, is the record, did the district court address that below? Or if we conclude that there was deficiency, should we remand for the district court to hold proceedings on prejudice? Well, I think counsel has answered that, that Judge Burns perhaps did not develop the prejudice argument as an issue as much as he should have. But I think that if you look at the totality of the circumstances, which you have to do in these types of cases, when you look at the totality of the circumstances, we argued at the district court level, and we argue now, that there was enough evidence for the immigration judge, enough evidence in the record to show that there was no prejudice, because the defendant could not show a plausible ground for breach. Remind you, the defendant has the burden of showing prejudice, and the defendant has not shown prejudice at any stage in this proceeding. Okay, thank you. Thank you. Unless there are any other questions from the government, I would reserve my 342 for, no, I wouldn't reserve it. I'm sorry. I forgot what shot I was on for a moment. But I have nothing for the rest of the questions. You would give it to your opponent and let her argue along. I'm not that generous. Thank you. Okay, we'll give you a minute. Just briefly, I think that, obviously, the question of prejudice is an issue for this Court. I think that when we look at prejudice in the case of voluntary departure, we look at whether it would be plausible for not this immigration judge, who had none of the positive equities of Mr. Melendez-Castro, we look at whether when things happened appropriately, as said in Arce-Hernandez, is it plausible that exercise of discretion, without belaboring all of the cases that I cited in my brief, there are plenty of cases where the immigration judge has given voluntary departure with people with criminal convictions. There's people with sexual battery convictions, people with felony drug convictions. People have gotten voluntary departure. So just having criminal convictions is not a bar to getting voluntary departure. And it is clear from the record that the immigration judge did not give Mr. Melendez an opportunity to present any of his positive equities. And, therefore, we can't consider what he did because the record is incomplete. Unless you have any further questions, I'll submit. Thank you. The case of United States v. Melendez-Castro is submitted. And we'll next hear United States v. Sandoval.
judges: Nelson, Gould, Ikuta